**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CV-09-8096-PCT-NVW |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| $133,420.00 in U.S. Currency, | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are Claimant Damon Louis' Motion to Suppress (doc. # 22), the Government's Motion to Strike Claim and Answer of Damon J. Louis (doc. # 27), the Government's Motion to Stay Louis' Motion to Suppress (doc. # 29), Louis' Motion for Summary Judgment (doc. # 42), Louis' Motion to Stay Discovery (doc. # 45), and Louis' Motion to File Supplemental Memorandum (doc. # 53).

**I.     Facts**

The following facts are either undisputed or are framed in the light most favorable to Claimant Louis. On January 6, 2009, Officer Mace Craft of the Arizona Department of Public Safety stopped a white 2009 Buick driven by Claimant Damon Louis on the westbound Interstate 40 in Arizona. When prompted, Louis produced a California driver's license and a rental agreement indicating he had rented the vehicle from Avis Car Rental in San Francisco, California, on January 2, 2009. The vehicle was due to be returned on January 9, 2009.

Officer Craft asked Louis where he was traveling from and why he didn't fly, to which Louis responded that he had visited Albuquerque for a friend's wedding and had driven with a friend who stayed there. When Officer Craft inquired about the wedding, Louis explained that the wedding was in fact a month ago and that he had returned to Albuquerque for the ceremony. Officer Craft eventually completed a traffic warning and provided Louis with a copy. He then asked whether there was anything illegal in the vehicle, to which Louis responded no. When asked, Louis also twice denied having any large amounts of U.S. currency in the vehicle.

Another officer who had arrived on the scene subsequently conducted a pat-down of Louis' person, which revealed two cell phones. Although the parties dispute whether Louis consented to a search of his vehicle or to a canine drug detection sniff, Officer Craft at some point directed his canine to sniff the exterior of the vehicle. After observing the canine's reactions, Officer Craft informed Louis that he had probable cause to search the vehicle and again asked if there was anything illegal inside. Louis said no. A search of the trunk revealed three cardboard boxes, one of which contained a grocery bag with three zip-lock bags of U.S. currency inside. Officer Craft placed Louis in handcuffs and escorted him to the Arizona Department of Public Safety.

Upon arrival, two detectives advised Louis of his Miranda rights and conducted an interview. Louis explained that after he rented the 2009 Buick, he drove from San Francisco, California, to Denver, Colorado, and was on his way back to San Francisco when Officer Craft stopped him. He also admitted that he was in fact aware of the currency in the trunk of the vehicle because he had put it there. However, he refused to answer any questions about how he acquired the currency, where it was going, or who it belonged to. At the conclusion of the interview, Louis was invited to sign a DPS "Disclaimer of Ownership of Currency or Property" form, but declined to do so without the presence of an attorney. He was subsequently released and advised that he was free to leave. His vehicle was returned, but law enforcement retained the two cell phones and the currency.

On March 9, 2009, Louis filed a claim for the defendant currency with the Drug Enforcement Administration. The Government initiated this *in rem* civil forfeiture proceeding on June 5, 2009, alleging that the currency is subject to forfeiture pursuant to both 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6) as proceeds traceable to controlled substance offenses. In August 2009, Louis filed a claim and answer contesting the forfeiture after the Court granted a stipulated extension of time in which to do so. The claim alleges that Louis has "an ownership and/or a possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property." (Doc. # 14.)

On October 5, 2009, the Government propounded special interrogatories pursuant to Rule G(6) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, which allows the Government to serve interrogatories limited to "the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Interrogatory 2 requested the following information:

> State the extent and describe with particularity the nature of your interest in the defendant currency, and identify how you acquired that interest. Your answer should include, but not be limited to, the following:
>
> (a) The date(s), time, place and manner in which the defendant currency was obtained, including the names, address and telephone numbers of the person(s) from whom the currency was obtained.
>
> (b) The circumstances of each transaction by which you acquired or obtained any interest in the defendant currency.
>
> (c) The reason(s) the defendant currency was obtained, and witnesses, including the names, addresses, and telephone numbers of such witnesses, to any of the transactions by which the defendant currency was obtained.
> . . .

Louis objected to the request on various grounds, including his Fifth Amendment right against self-incrimination and his Fourth Amendment rights against unreasonable searches and seizures, but ultimately provided the following limited response: "Without waiving said objections, my interest in the defendant property is as the owner and possessor of said property, with a right to exercise dominion and control over said property." His responses to other similar interrogatories provided sometimes less, but

- 3 -

certainly no more, explanation of the nature of his property interest in the defendant currency.

On January 14, 2010, Louis filed a motion to suppress evidence (doc. # 22), to which the Government responded with its motion to strike Louis' claim and answer for lack of standing (doc. # 27) and its motion to stay consideration of the motion to suppress pending resolution of the motion to strike (doc. # 29). Louis followed his motion to suppress with a February 24, 2010 motion for summary judgment (doc. # 42) arguing that the Government lacked probable cause to initiate this forfeiture proceeding. All of the aforementioned motions are currently pending.

**II.     Analysis**

**A.     Motion to Stay**

In its motion to stay, the Government contends that the issue of standing must be resolved before Louis' motion to suppress is considered. Louis, on the other hand, argues that because the motion to suppress seeks, in part, suppression of statements he made to law enforcement officers regarding his relationship to the defendant currency, and because those statements inform the standing inquiry, the Court should resolve the motion to suppress before addressing standing. The motion to stay therefore boils down to a threshold dispute over the order in which the Court may address the issues presented by the various motions.

Civil *in rem* forfeiture proceedings are governed by the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1117 (9th Cir. 2004). Rule G of the Supplemental Rules, effective in 2006, permits any person claiming an interest in the property at issue to contest the forfeiture by filing a claim in the court where the action is pending. Supp. R. Certain Adm. & Mar. Cl. G(5)(a)(i). The government, in turn, may move to strike the claim on various grounds, including the claimant's lack of standing. *Id.* at G(8)(c)(i)(B). The motion to strike "must be decided before any motion by the claimant to dismiss the action." *Id.* at G(8)(c)(ii)(A). The Advisory Committee Note to

1  Rule G(8)(c)(ii) further indicates that a claimant who lacks standing "is not entitled to
2  challenge the forfeiture on the merits."

3  The parties spend an inordinate amount of time addressing whether the motion to
4  suppress is "dispositive" of the action, but that inquiry finds no basis in the language of
5  Rule G or its Advisory Committee Notes.  Because the motion is not one seeking
6  dismissal of the action, the relevant inquiry is whether Louis' motion to suppress is a
7  challenge to the forfeiture on the merits, and the answer is yes.  The likelihood of the
8  Government's success in this forfeiture action turns substantially on the admissibility of
9  its evidence, and particularly the $133,420.00 in U.S. currency seized from Louis' rental
10 vehicle.  Louis' motion to suppress challenges the admissibility of his statements to law
11 enforcement officials as the final fruits of the various allegedly unconstitutional searches
12 and seizures that occurred during his January 6, 2009 encounter.  Those same searches
13 and seizures form the basis of Louis' argument that other evidence, including the
14 currency itself, should be suppressed.  Therefore, even if his statements are relevant to the
15 standing inquiry, a determination of their admissibility necessarily requires the Court to
16 evaluate the admissibility of most if not all of the Government's evidence.  It cannot
17 reasonably be argued that such a determination does not go to the merits of the action.

18 To be sure, other courts have required claimants to establish Article III standing as
19 a prerequisite to bringing a motion to suppress in a forfeiture proceeding.  *See United*
20 *States v. $ 1,185,135.00 in U.S. Currency*, 320 Fed. Appx. 893, 894 (11th Cir. 2008)
21 (noting that a claimant must establish standing to challenge the forfeiture proceeding in
22 order to raise a suppression claim); *United States v. $ 321,470.00, U.S. Currency*, 874
23 F.2d 298, 300 (5th Cir. 1989) (affirming the district court's finding that the claimant's
24 lack of Article III standing mooted his motion to suppress); *United States v. $ 543,190.00*
25 *in U.S. Currency*, 535 F. Supp. 2d 1238, 1248 (M.D. Ala. 2008) (addressing standing to
26 contest the forfeiture before addressing the lawfulness of the seizure).  Therefore, the
27 admissibility of Louis' statements cannot be evaluated until standing has been resolved.
28

**B.     Standing**

As mentioned, Rule G of the Supplemental Rules permits any person claiming an interest in property at issue in a forfeiture proceeding to contest the forfeiture by filing a claim in the court where the action is pending. Supp. R. Certain Adm. & Mar. Cl. G(5)(a)(i). However, the claimant bears the burden of establishing standing, the threshold function of which is "to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $ 557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002). Standing is a question of law. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009).

The Government argues that Louis lacks both Article III and statutory standing.[1] The argument as to statutory standing is without merit because it incorrectly assumes that Louis must be "an innocent owner" for purposes of 18 U.S.C. § 983(d)(1) in order to have statutory standing. Whether a claimant can prove that he or she is an "innocent owner" is irrelevant to the threshold standing inquiry; rather, it is a defense that can be raised to defeat forfeiture. *See id.* (entitled "innocent owner defense"). A determination of statutory standing ensures the claimant has complied with the procedural requirements of 18 U.S.C. § 983(a)(4)(a) and the Supplemental Rules for Certain Admiralty and Maritime Claims. *See id.* § 983(a)(4)(A); *United States v. $ 114,031.00 in U.S. Currency*, 284 Fed. Appx. 754, 756 (11th Cir. 2008); *United States v. $ 487,825.00 in United States Currency*, 484 F.3d 662, 664 (3d Cir. 2007). Louis' procedural compliance has not been challenged. Therefore, only Article III standing need be addressed.

To have Article III standing, a claimant must demonstrate that he or she has "a sufficient interest in the property to create a case or controversy." *United States v. Real Property Located at 475 Martin Lane,* 545 F.3d 1134, 1140 (9th Cir. 2008). Although the

---

[1] In its Reply, the Government argues for the first time that Louis also lacks prudential standing. The Court finds it unnecessary to address that issue. Therefore, Louis' recent motion to file a supplemental memorandum addressing prudential standing will be denied as moot.

- 6 -

1 Ninth Circuit has not expressly addressed the applicable standard of proof, a review of
2 existing law suggests the standard varies with the stage of the proceeding. *See United*
3 *States v. $ 57,790.00 in U.S. Currency*, 263 F. Supp. 2d 1239, 1241-42 (S.D. Cal. 2003)
4 (harmonizing seemingly conflicting Ninth Circuit authority governing the applicable
5 standard of proof by distinguishing between stages of the proceeding).

6 At the motion to dismiss stage, a mere allegation of ownership or some
7 explanation of a lawful possessory interest is sufficient. *United States v. Real Property*
8 *Located at 475 Martin Lane,* 545 F.3d 1134, 1140 (9th Cir. 2008); *see also United States v.*
9 *$ 191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994) (reviewing a district
10 court's denial of a motion to dismiss for lack of standing). However, mere unexplained
11 possession is insufficient, even at this early stage. *Id.*; *see also $ 543,190.00 in U.S.*
12 *Currency*, 535 F. Supp. 2d at 1249.

13 At the summary judgment and trial stages, however, more is required. Rule
14 G(8)(c)(ii)(B), effective in 2006, states that a motion to strike for lack of standing "may
15 be presented as a motion for judgment on the pleadings or as a motion to determine after a
16 hearing or by summary judgment whether the claimant can carry the burden of
17 establishing standing *by a preponderance of the evidence*." (emphasis added). The 2006
18 Advisory Committee Note for Rule G(8)(c)(ii) explains:

> Paragraph (c)(ii) further identifies three procedures for addressing claim standing. If a claim fails on its face to show facts that support claim standing, the claim can be dismissed by judgment on the pleadings. If the claim shows facts that would support claim standing, those facts can be tested by a motion for summary judgment. If material facts are disputed, precluding a grant of summary judgment, the court may hold an evidentiary hearing. The evidentiary hearing is held by the court without a jury. The claimant has the burden to establish claim standing at a hearing; procedure on a government summary judgment motion reflects this allocation of the burden.

24 Supreme Court and Ninth Circuit case law also supports a heightened standard of
25 proof of standing at the summary judgment and trial stages. *See Lujan v. Defenders of*
26 *Wildlife*, 504 U.S. 555, 561 (1992) (because standing must be supported "with the manner
27 and degree of evidence required at the successive stages of the litigation," a plaintiff
28

cannot rest on mere allegations at the summary judgment stage); *United States v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1991) (requiring claimant to establish standing by a preponderance of the evidence at trial).

Therefore, to defeat summary judgment, the claimant must come forward with some evidence demonstrating a genuine issue of material fact as to standing, and at trial or an evidentiary hearing, standing must be proved by a preponderance of the evidence. *See $ 57,790.00 in U.S. Currency*, 263 F. Supp. 2d at 1242. While a claimant is always free to invoke the Fifth Amendment privilege against self-incrimination, the privilege is not "a substitute for evidence that would assist in meeting a burden of production." *United States v. Rylander*, 460 U.S. 752, 758 (1983). "In other words, '[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence.'" *United States v. $ 148,840 in U.S. Currency*, 521 F.3d 1268, 1274-75 (10th Cir. 2008) (citing *United States v. Taylor*, 975 F.2d 412, 404 (7th Cir. 1992)).

Here the Government has presented its motion to strike as a motion for summary judgment accompanied by a separate statement of facts (doc. # 28) and several exhibits, including Louis' responses to the Government's Rule G(6) special interrogatories. To defeat the motion, Louis must produce some evidence demonstrating a genuine issue of material fact as to whether he owns or otherwise has a lawful possessory interest in the defendant currency. This he has failed to do because his response, which is premised entirely on the mistaken assumption that the action is in its initial stages, merely asserts that he is required to do no more than allege an ownership or lawful possessory interest in the currency. The only proffered "evidence" of his ownership or other property interest are his conclusory responses to the Government's special interrogatories and the fact that the currency was in his possession at the time it was seized. Neither is sufficient.

Louis' responses to the interrogatories merely assert bald, unexplained ownership and possessory interests in the currency. There is no explanation of how or why he acquired the funds. While he is entitled to invoke Fifth Amendment protection against self-incrimination, he does so at the peril of failing to produce sufficient evidence of

- 8 -

standing to contest this civil proceeding. Louis has produced no evidence corroborating his claims other than the fact that the currency was in his possession at the time it was seized. Mere unexplained possession does not establish a possessory interest even at the pleading stage, and it is insufficient to create a *genuine* issue of material fact as to ownership.

Though summary judgment is warranted in light of Louis' inadequate response, the Court is mindful of the somewhat confusing state of Ninth Circuit authority on the standard of proof applicable to standing in forfeiture proceedings. Therefore, the Court will deny the motion to strike and instead conduct a Rule G(8)(c)(ii)(B) evidentiary hearing on Friday, April 30, 2010, at 10am to determine whether Louis can establish standing by a preponderance of the evidence. By Friday, April 23, 2010, the parties are requested to submit a brief no longer than 12 pages addressing the following:

(1) Which statements made by Louis during the January 6, 2009 encounter does each party intend to introduce at the hearing, if any?

(2) Of those statements, which are incriminating, if any?

(3) Assuming *arguendo* that the statements are the fruits of unlawful searches and seizures and therefore subject to suppression, may they nevertheless be introduced for purposes of determining standing?

(4) Assuming *arguendo* that the statements are the fruits of unlawful searches and seizures and therefore subject to suppression, may they nevertheless be used for substantive impeachment purposes?

IT IS THEREFORE ORDERED that the Government's Motion to Stay Louis' Motion to Suppress (doc. # 29) is granted.

IT IS FURTHER ORDERED that the Government's Motion to Strike Louis' Claim and Answer (doc. # 27) is denied as to summary judgment, without prejudice to the April 30, 2010 evidentiary hearing on Claimant's standing..

IT IS FURTHER ORDERED that Louis' Motion to File Supplemental Memorandum (doc. # 53) is denied as moot.

1    IT IS FURTHER ORDERED setting an evidentiary hearing on the issue of
2    standing for Friday, April 30, 2010, at 10am.  The parties shall submit the additional
3    briefing requested in the order by Friday, April 23, 2010.
4    IT IS FURTHER ORDERED that Claimant Damon Louis submit to the Court a
5    new uncorrupted copy of the non-electronically filed Exhibit B, submitted in support of
6    his Response to the Government's Motion to Stay and his Response to the Government's
7    Motion to Strike.  (Doc. # 47.)
8    DATED this 9th day of April, 2010.

_____
Neil V. Wake
United States District Judge