**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>$133,420.00 in U.S. Currency,<br><br>    Defendant. | No. CV-09-8096-PCT-NVW<br><br>**ORDER** |

Before the Court are Claimant Damon Louis' Motion to Suppress (doc. # 22), the Government's Motion to Strike Claim and Answer of Damon J. Louis (doc. # 27), the Government's Motion to Stay Louis' Motion to Suppress (doc. # 29), Louis' Motion for Summary Judgment (doc. # 42), Louis' Motion to File Supplemental Memorandum (doc. # 53) and the Government's Motion to Strike Louis' Discovery Responses (doc. # 79).

**I.    Facts**

On January 6, 2009, Officer Mace Craft of the Arizona Department of Public Safety stopped a white 2009 Buick driven by Claimant Damon Louis on the westbound Interstate 40 in Arizona. When prompted, Louis produced a California driver's license and a rental agreement indicating he had rented the vehicle from Avis Car Rental in San Francisco, California, on January 2, 2009. The vehicle was due to be returned on January 9, 2009.

1    Officer Craft asked Louis where he was traveling from and why he did not fly.
2    Louis responded that he had visited Albuquerque for a friend's wedding and had driven
3    with a friend who remained there. When Officer Craft inquired about the wedding, Louis
4    explained that the wedding was in fact a month ago and that he had returned to
5    Albuquerque for the ceremony. Officer Craft eventually completed a traffic warning and
6    provided Louis with a copy. He then asked whether there was anything illegal in the
7    vehicle, to which Louis responded no. Louis also twice denied having any large amounts
8    of U.S. currency in the vehicle.

9    Another officer who had arrived on the scene subsequently conducted a pat-down
10   of Louis' person, which revealed two cell phones. Although the parties dispute whether
11   Louis consented to a search of his vehicle or to a canine drug detection sniff, Officer
12   Craft at some point directed his canine to sniff the exterior of the vehicle. When the
13   canine alerted, Officer Craft informed Louis that he had probable cause to search the
14   vehicle and again asked if there was anything illegal inside. Louis said no. A search of
15   the trunk revealed three cardboard boxes, two of which contained large decorative rocks.
16   The third box contained a plastic grocery bag and a black box labeled "Black Jet
17   Throwing Dagger Triple Set". The grocery bag contained three zip-lock bags of U.S.
18   currency totaling $133,420.00. Officer Craft subsequently placed Louis in handcuffs. A
19   search of Louis' person revealed a receipt, dated January 6, 2009, for the purchase of the
20   set of throwing daggers found in the third box. Louis was thereafter escorted to the
21   Arizona Department of Public Safety in Flagstaff, Arizona.

22   Upon arrival, two detectives advised Louis of his Miranda rights and conducted an
23   interview, a digital video recording of which Louis has submitted as an exhibit. During
24   the interview, Louis explained that after he rented the 2009 Buick in San Francisco,
25   California, he drove to Denver, Colorado, and was on his way back to San Francisco
26   when Officer Craft stopped him. He also stated that he knew the currency was in the
27   trunk of the vehicle because he had put it there, but denied any knowledge of the amount
28

of the currency. He also admitted that the currency was not his.[1]  At the conclusion of the interview, Louis was invited to sign a DPS "Disclaimer of Ownership of Currency or Property" form, but declined to do so without first consulting an attorney. He was subsequently released and advised that he was free to leave. His vehicle was returned, but law enforcement retained the two cell phones and the currency.

On March 9, 2009, Louis filed a claim for the defendant currency with the Drug Enforcement Administration. The Government initiated this *in rem* civil forfeiture proceeding on June 5, 2009, alleging that the currency is subject to forfeiture pursuant to both 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6) as proceeds traceable to controlled substance offenses. In August 2009, Louis filed a claim and answer contesting the forfeiture. The claim alleges that Louis has "an ownership and/or a possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property." (Doc. # 14.)

On October 5, 2009, the Government propounded special interrogatories pursuant to Rule G(6) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, which allows the Government to serve interrogatories limited to "the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Interrogatory 2 requested the following information:

> State the extent and describe with particularity the nature of your interest in the defendant currency, and identify how you acquired that interest. Your answer should include, but not be limited to, the following:
>
> (a) The date(s), time, place and manner in which the defendant currency was obtained, including the names, address and telephone numbers of the person(s) from whom the currency was obtained.

---

[1] Louis denies admitting at the interview that he is not the owner of the currency, but the recording of the interview very clearly indicates otherwise. At one point, one of the detectives said, "You've made a statement–the money's not yours, I'm assuming the money's not yours?" Louis unmistakably shook his head and responded, "No."

- 3 -

(b) The circumstances of each transaction by which you acquired or obtained any interest in the defendant currency.

(c) The reason(s) the defendant currency was obtained, and witnesses, including the names, addresses, and telephone numbers of such witnesses, to any of the transactions by which the defendant currency was obtained.
. . .

Louis objected to the request on various grounds, including his Fifth Amendment right against self-incrimination and his Fourth Amendment rights against unreasonable searches and seizures, but ultimately provided the following limited response: "Without waiving said objections, my interest in the defendant property is as the owner and possessor of said property, with a right to exercise dominion and control over said property." His responses to the other interrogatories were similarly conclusory and incomplete. While Louis willingly responded to the Government's inquiries into the type of property interest he asserted, he repeatedly declined, on Fifth Amendment self-incrimination grounds, to identify how, why, or where he obtained the currency.

On January 14, 2010, Louis filed a motion to suppress (doc. # 22), seeking, in part, suppression of the statements he made during his interview on January 6, 2009, as fruits of the allegedly unlawful seizure and search of his vehicle. The Government responded by filing a motion to strike Louis' claim and answer for lack of standing (doc. # 27) and a motion to stay consideration of the motion to suppress pending resolution of the standing issue (doc. # 29). The Government has also moved to strike Louis' responses to the special interrogatories on grounds of improper use of the Fifth Amendment privilege against self-incrimination (doc. # 79).

**II.     Analysis**

    **A.     Motion to Stay**

In its motion to stay, the Government contends that the issue of standing must be resolved before Louis' motion to suppress is considered. Louis, on the other hand, argues that because the motion to suppress seeks, in part, suppression of statements he made to law enforcement officers regarding his relationship to the defendant currency, and

because those statements inform the standing inquiry, the Court should resolve the motion to suppress before addressing standing.

Other courts have required claimants to establish Article III standing as a prerequisite to bringing a motion to suppress in a forfeiture proceeding. *See United States v. $ 1,185,135.00 in U.S. Currency*, 320 Fed. Appx. 893, 894 (11th Cir. 2008) (noting that a claimant must establish standing to challenge the forfeiture proceeding in order to raise a suppression claim); *United States v. $ 321,470.00, U.S. Currency*, 874 F.2d 298, 300 (5th Cir. 1989) (affirming the district court's finding that the claimant's lack of Article III standing mooted his motion to suppress); *United States v. $ 543,190.00 in U.S. Currency*, 535 F. Supp. 2d 1238, 1248 (M.D. Ala. 2008) (addressing standing to contest the forfeiture before addressing the lawfulness of the seizure). However, the order in which the motions may be considered need not be decided in this case because, as explained below, Louis has failed to establish standing even without considering the statements he seeks to suppress.

**B.  Standing**

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, governs all *in rem* civil forfeiture proceedings commenced on or after August 23, 2000. *See United States v. Approximately $1.67 Million in United States Currency*, 513 F.3d 991, 998 (9th Cir. 2008). Those forfeiture proceedings are also governed by the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* 18 U.S.C. § 983(a)(4)(A); *United States v. $ 100,348.00 in U.S. Currency*, 354 F.3d 1110, 1117 (9th Cir. 2004).

Supplemental Rule G, effective in 2006, permits any person claiming an interest in the property to contest the forfeiture by filing a claim in the court where the action is pending. Supp. R. Certain Adm. & Mar. Cl. G(5)(a)(i). At any time after the claim is filed and before the close of discovery, the Government "may serve special interrogatories limited to the claimant's identity and relationship to the defendant property . . . ." *Id.* at G(6)(a). Furthermore, the Government may move to strike the

claim for lack of standing at any time before trial. *Id.* at G(8)(c)(i)(B). The motion to strike "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." *Id.* at G(8)(c)(ii)(B). As further explained by the 2006 Advisory Committee Notes to Supplemental Rule G(8)(c)(ii)(B):

> If a claim fails on its face to show facts that support claim standing, the claim can be dismissed by judgment on the pleadings. If the claim shows facts that would support claim standing, those facts can be tested by a motion for summary judgment. If material facts are disputed, precluding a grant of summary judgment, the court may hold an evidentiary hearing. The evidentiary hearing is held by the court without a jury. The claimant has the burden to establish claim standing at a hearing; procedure on a government summary judgment motion reflects this allocation of the burden.

Here, the Government has presented its motion to strike as a motion for summary judgment, accompanied by Louis' responses to the Government's Supplemental Rule G(6) special interrogatories. The Government argues that Louis lacks both Article III and statutory standing.[2] Statutory standing ensures the claimant has complied with the procedural requirements of 18 U.S.C. § 983(a)(4)(A) and the Supplemental Rules for Certain Admiralty and Maritime Claims. *United States v. $ 114,031.00 in U.S. Currency*, 284 Fed. Appx. 754, 756 (11th Cir. 2008); *United States v. $ 487,825.00 in United States Currency*, 484 F.3d 662, 664 (3d Cir. 2007). Because Louis' procedural compliance remains unchallenged, the Court need address only Article III standing.

A claimant bears the burden of establishing Article III standing, the threshold function of which is "to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $ 557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002). A claimant must therefore demonstrate that he or she has "a sufficient interest in the property to create a case or

---

[2]In its Reply, the Government argues for the first time that Louis also lacks prudential standing. The Court finds it unnecessary to address that issue. Therefore, Louis' motion to file a supplemental memorandum addressing prudential standing will be denied.

- 6 -

controversy." *United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008). Because standing requirements "are not mere pleading requirements" but rather an "indispensable part" of a case, standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Therefore, while general allegations are sufficient at the pleading stage, they are no longer sufficient at the summary judgment and trial stages when some evidence of standing is required. *Id.*

An oft-cited Ninth Circuit case discussing standing requirements in the context of civil forfeiture proceedings is *United States v. $ 191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994). There, in reviewing the denial of a motion to dismiss for lack of standing, the Ninth Circuit explained that "to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items," including an ownership or possessory interest. *Id.* at 1057. The court went on to extrapolate several principles of standing from other cases, concluding:

> As an initial matter, a simple claim of *ownership* will be sufficient to create standing to challenge a forfeiture. Mere *unexplained possession* will not be sufficient. However, where a claimant asserts a *possessory interest* and provides some explanation of it (e.g., that he is holding the item for a friend), he will have standing.

*Id.* at 1058 (emphasis in original). Because the claimant in *$ 191,910.00* claimed to own some of the money seized from his possession and explained that he was carrying the rest for a client, standing was satisfied. *Id.*

That *$ 191,910.00* was decided prior to the enactment of both CAFRA and Supplemental Rule G raises a number of uncertainties. For one, it is unclear whether CAFRA and Supplemental Rule G worked a substantive change to pre-existing case law on standing requirements in civil forfeiture proceedings. The parties have been unable to point to, and the Court has been unable to find, anything in either CAFRA or Supplemental Rule G indicating as much. It appears that CAFRA and Supplemental Rule G merely clarify the procedural vehicles the Government may use to challenge a claimant's standing.

Even assuming *$ 191,910.00* remains good law, more uncertainty abounds. Because there is no discussion in *$ 191,910.00* of the principle that standing must be established with the requisite degree of proof required at successive stages of the litigation, it is unclear whether the general principles of standing espoused in the decision apply only to the pleading stage or also to the summary judgment and trial stages. As a practical matter, the distinction has no bearing on whether Louis' claimed *possessory* interest in the currency is sufficient because he has provided no explanation of his possession whatsoever. *$ 191,910.00* is clear that mere unexplained possession is inadequate to establish standing. The distinction is important, however, insofar as Louis' claim of *ownership* is concerned because a simple claim of ownership is sufficient under *$ 191,910.00*. Whether it is adequate here turns on whether the principles of standing in *$ 191,910.00* apply to the summary judgment stage.

A recent Ninth Circuit decision, relying on *$ 191,910.00* as authority for what is required to satisfy standing specifically "at the motion to dismiss stage," appears to have confined the applicability of *$ 191,910.00* to the pleading stage. *Real Property Located at 475 Martin Lane*, 545 F.3d at 1140. At least one district court has done the same in an attempt to harmonize *$ 191,910.00*, which may be read to say that a mere allegation of ownership is sufficient to establish standing, with other seemingly conflicting Ninth Circuit authority. *See United States v. $ 57,790.00 in U.S. Currency*, 263 F. Supp. 2d 1239, 1241-42 (S.D. Cal. 2003) (reconciling *$ 191,910.00* with *United States v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1991) (requiring claimant to establish standing by a preponderance of the evidence)).

There is good reason to limit *$ 191,910.00* to the pleading stage. For one, *Lujan* unequivocally states that something more than a mere allegation is necessary to support standing at the summary judgment and trial stages. 504 U.S. at 561. For another, as recognized by the district court in *$ 57,790.00*, if mere allegations were enough at the summary judgment and trial stages, it would be impossible, as a practical matter, for the Government to challenge illegitimate claims of ownership. 263 F. Supp. 2d at 1244.

- 8 -

The above concerns are implicit in a recent Tenth Circuit discussion of standing requirements at the summary judgment stage of a forfeiture proceeding. *See United States v. $ 148,840.00 in United States Currency*, 521 F.3d 1268 (10th Cir. 2008). There, the court relied extensively on *$ 191,910.00* but also acknowledged the principle that a claimant "bears the burden of establishing his own constitutional standing at all stages in the litigation." *Id.* at 1273. Reconciling the two, the court held that on summary judgment, a person claiming an ownership interest establishes standing by producing an evidentiary assertion of ownership in conjunction with some other corroborating evidence of ownership, for example, actual possession of the res at the time it was seized. *Id.* at 1275. There was enough evidence of standing to deny summary judgment because the claimant offered his deposition testimony that he owned the currency as well as the undisputed fact that the currency was seized from the vehicle he was driving. *Id.* at 1277.

However, the Tenth Circuit noted in dictum that the case would be very different "if the district court had exercised its discretion to strike [the claimant's] claim of ownership to the currency in light of his repeated invocations of the *Fifth Amendment* privilege." *Id.* at 1277 (emphasis in original). In civil cases, the Fifth Amendment privilege against self-incrimination cannot be used as both a shield and a sword, discarded "for the limited purpose of making statements to support a summary judgment motion" but invoked to shield those statements from further scrutiny. *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991). A witness' testimony may therefore be stricken if he or she invokes the Fifth Amendment in response to further questioning about the subject of the testimony. *Id.* at 1308-09 (striking party's affidavit on summary judgment because he refused to submit to a deposition on Fifth Amendment grounds); *United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (finding the district court "had ample authority" to strike party's affidavit after he refused to answer deposition questions about the subject of the affidavit testimony on Fifth Amendment grounds). Because the claimant in *$ 148,840.00* repeatedly asserted, at his deposition, that he owned the seized currency but invoked the Fifth Amendment privilege in response to specific questions about the source

of the money and why he was transporting it, the testimony could have been stricken. 521 F.3d at 1272, 1277. However, because it was not stricken, the district court "was obliged to accept [the] claim of ownership in determining whether [the claimant] had met his burden of proving standing by a preponderance of the evidence." *Id.* at 1277.

In this case, Louis' assertion of ownership in his responses to the Government's special interrogatories together with the fact that the currency was seized from the car he was driving would be enough to establish standing under *$ 148,840.00*. However, as the Government points out in its motion to strike Louis' discovery responses, Louis responded to the Government's special interrogatories only where advantageous to his cause. He conclusorily claimed an ownership interest in response to the Government's inquiries into the nature of his property interest in the currency, but declined, on Fifth Amendment self-incrimination grounds, to respond to follow-up questions about the details of that ownership interest, including how, why, or where he obtained the funds. Louis' invocation of the Fifth Amendment is therefore indistinguishable from that of the claimant in *$ 148,840.00* and is a clear example of the impermissible use of the privilege as both a shield and a sword. Louis cannot be permitted to respond where it benefits his standing position yet shield that response from further scrutiny, thereby using the Fifth Amendment privilege "to mutilate the truth." *Parcels of Land*, 903 F.2d at 43.

The Court will therefore exercise its discretion to strike Louis' interrogatory responses and therefore his evidentiary assertion of ownership. What remains is the undisputed fact that Louis was in physical possession of the currency when it was seized.[3] Louis has provided no explanation of that possession. Mere unexplained possession is

---

[3] Louis argues that the presence of a set of throwing daggers in the same box as that containing the currency and the fact that a receipt for its purchase was found on Louis' person is additional evidence of ownership. The Court is not persuaded. While the receipt is evidence that he owns the set of daggers, it adds nothing to the circumstance that the money was in the trunk of his car.

- 10 -

insufficient for standing at any stage of the proceeding. *See $ 191,910.00 in U.S. Currency*, 16 F.3d at 1058; *$ 148,840.00 in United States Currency*, 521 F.3d at 1275-76.

The Court is mindful that the rules of decision proposed by both sides in this case are open to abuse. On the one hand, striking standing on bare claims of ownership hidden behind Fifth Amendment silence, at the summary judgment stage where actual evidence is needed, spares the Government from litigation from those who will never prove their ownership. Were it otherwise, mere drug couriers could challenge forfeiture of their cargoes. The Court finds no direct authority that courier's title alone suffices for standing when the claimant must go beyond pleadings to evidence. On the other hand, this rule can occasionally allow the Government to profit from its own illegal searches and seizures by shielding them from scrutiny. Such a result would be troubling where a claimant who is in fact the true owner of the res declines to explain his interest because it may appear to incriminate him, whether he is guilty of a crime or not. The Fifth Amendment protects the innocent and the guilty alike.

On balance, the recently-enacted Supplemental Rule G appears to tip the scale in favor of the Government's interest in not defending against claims without minimal evidence of standing. It does so by allowing the Government to propound special interrogatories and to challenge a claimant's standing by summary judgment early in the proceeding. *See* Supp. R. Certain Adm. & Mar. Cl. G(6)(a), (8)(c)(ii)(B). In the event disputed issues of material fact preclude summary judgment, the Court may evaluate standing by a preponderance of the evidence at an evidentiary hearing without a jury. *See* 2006 Advisory Committee Notes to Supp. R. Certain Adm. & Mar. Cl. G(8)(c)(ii)(B). What is clear from Supplemental Rule G is that upon proper motion, claimants must now produce *evidence* to support their claimed interest in the res. This Court is not free to re-weigh the balance struck by Rule G. Louis' claim is therefore stricken. It remains for the Government to file a proper motion for judgment.

IT IS THEREFORE ORDERED that the Government's Motion to Strike Louis' Discovery Responses (doc. # 79) is granted.

1    IT IS FURTHER ORDERED that the Government's Motion to Strike Louis'
2  Claim and Answer (doc. # 27) is granted.
3    IT IS FURTHER ORDERED that Claimant Damon Louis' Motion to Suppress
4  (doc. # 22) is denied for lack of standing.
5    IT IS FURTHER ORDERED that the Government's Motion to Stay Louis'
6  Motion to Suppress (doc. # 29) is denied as moot.
7    IT IS FURTHER ORDERED that Louis' Motion for Summary Judgment (doc. #
8  42) is denied for lack of standing.
9    IT IS FURTHER ORDERED that Louis' Motion to File Supplemental
10 Memorandum (doc. # 53) is denied as moot.
11   Dated: June 23, 2010.

_____
Neil V. Wake
United States District Judge